

**FILED**

DEC 31 2019

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
        DEPUTY CLERK

Eastern District of California

In the Matter of the Search of )
)
AN APPLE IPHONE CELLULAR TELEPHONE )
WITH IMEI: 356709088331984 AND A ZTE )    Case No.
CELLULAR TELEPHONE MODEL #N9137 )          2:19 SW 1181           AC
WITH S/N 320276384166 )
)

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

**SEE ATTACHMENTS A-1 and A-2, attached hereto and incorporated by reference.**

located in the _____ Eastern _____ District of _____ California _____ , there is now concealed *(identify the person or describe the property to be seized):*

**SEE ATTACHMENT B, attached hereto and incorporated by reference**

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. Sections 841 and 846 | Distribution, Possession with Intent to Distribute, and Conspiracy to Distribute Fentanyl |

The application is based on these facts:

**SEE AFFIDAVIT, attached hereto and incorporated by reference.**

☑ Continued on the attached sheet.

☐ Delayed notice _____ days (give exact ending date if more than 30 _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Aaron Kacalek, DEA Task Force Officer
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 12/31/19

_____
*Judge's signature*

City and state: Sacramento, California

Allison Claire, U.S. Magistrate Judge
*Printed name and title*

McGREGOR W. SCOTT
United States Attorney
CAMERON L. DESMOND
Assistant United States Attorney
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700
Facsimile: (916) 554-2900

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In the Matter of the Search of:<br><br>AN APPLE IPHONE CELLULAR TELEPHONE WITH IMEI: 356709088331984 AND A ZTE CELLULAR TELEPHONE MODEL #N9137 WITH S/N 320276384166. | CASE NO.<br><br>AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR WARRANT TO SEARCH DEVICES |

1.    I, Aaron Kacalek, being first duly sworn, hereby depose and state as follows:

## I.    INTRODUCTION AND AGENT BACKGROUND

2.    I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for search warrants authorizing the examination of property—two electronic devices—that are currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

3.    I am a Task Force Officer ("TFO") with the Drug Enforcement Administration, and have been held the assignment since September 2014. As a TFO on the DEA Task Force, I have been sworn as a deputized agent with the DEA.

4.    I am an "investigative or law enforcement officer of the United States" within the meaning of Section 2510(7) of Title 18, United States Code, that is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Title

AFFIDAVIT                                            1

1  18, United States Code, Section 2516. During my time with the DEA, I received special training in the
2  Controlled Substance Act, Title 21 United States Code, including, but not limited to, Sections 841(a)(1)
3  and 846, Controlled Substance Violations and Conspiracy to Commit Controlled Substance Violations,
4  respectively.

5      5.    I have received special training regarding criminal organizations engaged in conspiracies
6  to manufacture and/or possess with intent to distribute methamphetamine, cocaine, cocaine base, heroin,
7  marijuana, and other dangerous drugs prohibited by law. I received further training in search and
8  seizure law and many other facets of drug law enforcement including clandestine laboratory
9  investigations. The DEA Task Force, which is federally funded, is a collaborative group of officers and
10 agents from the DEA and state and local law enforcement agencies such as the California Highway
11 Patrol (CHP), Sacramento Police Department, California Department of Corrections and Rehabilitation,
12 El Dorado County Sheriff Department, and El Dorado County District Attorney's Office.

13     6.    The goal of the DEA Task Force is to investigate and disrupt illicit drug trafficking in
14 specified geographical areas by immobilizing the highest levels of targeted violators and trafficking
15 organizations. As a TFO on the DEA Task Force, I have been assigned to assist in multiple
16 investigations involving high-level drug traffickers. In March 2015, I was assigned to the Tactical
17 Diversion Squad within the DEA. This squad combines resources of federal, state, and local law
18 enforcement agencies in an innovative effort to investigate, disrupt, and dismantle activities of
19 individuals and organizations suspected of violating federal narcotics-related criminal laws and federal,
20 state, and local statutes pertaining to the diversion of licit pharmaceutical controlled substances and
21 listed chemicals.

22     7.    I am also responsible for searches of targets on probation or parole who are associated
23 with drug trafficking; authoring and disseminating current information on drug trafficking patterns;
24 monitoring and assessing drug activity; and providing training to CHP officers regarding drug
25 trafficking. I am also a Peace Officer with the California Highway Patrol and have held this position
26 since June 1999. Prior to my current assignment as a TFO, my prior assignments have included CHP
27 patrol duties in the Sacramento and Los Angeles areas. I have received over 1,200 hours of law-
28 enforcement training in the California Highway Patrol Academy. Subsequent to my academy training, I

AFFIDAVIT                2

1 received over 400 hours of law-enforcement training from multiple Federal, State, and allied local law
2 enforcement agencies in regard to a wide variety of topics, including, but not limited to, ethics, criminal
3 investigations, annual legal updates, current law enforcement trends, perishable skills, law-enforcement
4 techniques, gang investigations, computer crimes, and narcotic investigations.

5     8.     In October 2003, I attended and successfully completed an 80-hour Drug Recognition
6 Expert program at the CHP Academy. In March 2007, I attended the 40-hour CHP criminal
7 apprehension program. This class, taught by investigators, included training in investigative techniques,
8 street gangs, firearm related offenses and narcotics enforcement. Between 1999 and 2014, I participated
9 in no fewer than 500 investigations of unlawful activity concerning controlled substances, vehicle theft,
10 homicide, identity theft, fraud, weapon crimes, gang crimes, and various assaults. During these
11 investigations, I received information from offenders regarding their criminal methodology; I also
12 received instruction from and observed the investigative techniques used by experienced law
13 enforcement officers.

14     9.     I am familiar with the manner in which illegal drugs are imported, manufactured, and
15 distributed; methods of payment for such drugs; efforts of persons involved in such activities to avoid
16 detection by law enforcement; and methods used to finance drug transactions and launder drug proceeds.
17 I am familiar with the manner in which prescription pharmaceuticals are diverted for illicit use. I am
18 also familiar with the means through which persons counterfeit prescription pharmaceuticals and profit
19 therefrom. I have been recognized in California state court as an expert witness in the use, sales, and
20 transportation of controlled substances.

21     10.     Through my training, experience, and interaction with other experienced Special Agents,
22 Task Force Agents, and other drug investigators, I have become familiar with the methods employed by
23 drug traffickers to smuggle, safeguard, store, transport, and distribute drugs, to collect and conceal drug
24 related proceeds, and to communicate with other participants to accomplish such objectives. These
25 methods include the use of telephones, pre-paid or debit calling cards, public telephones, wireless
26 communications technology such as paging devices and cellular telephones, counter-surveillance,
27 elaborately planned smuggling schemes tied to legitimate businesses, and use of codes in
28 communications in an attempt to avoid detection by law enforcement. Based on my training and

AFFIDAVIT     3

1   experience, I also know that violators of the controlled substances laws often purchase telephones or
2   subscribe to telephone service using false names and/or other individuals' names to avoid detection by
3   law enforcement.

4       11.    The facts in this affidavit come from my personal observations, my training and
5   experience, and information obtained from other agents and witnesses. This affidavit is intended to
6   show merely that there is sufficient probable cause for the requested warrant and does not set forth all of
7   my knowledge about this matter.

8   ## II.    IDENTIFICATION OF THE DEVICES TO BE EXAMINED

9       12.    The property to be searched is (1) an Apple IPhone cellular telephone identified as
10  exhibit N-9 under DEA case number R7-18-0020, referred to as "Device #1," and (2) a ZTE cellular
11  telephone identified as Exhibit N-10 under DEA case R7-18-0020, referred to as "Device #2"
12  (collectively the "Devices"). Device #1 is identified with IMEI: 356709088331984. Device #2 is
13  identified with Model #N9137, MEID DEC: 256691624000202338, and S/N 320276384166. The
14  Devices are currently located at the DEA Sacramento District Office, 4328 Watt Avenue, Sacramento,
15  California.

16      13.    The applied-for warrant would authorize forensic examinations of the Devices for the
17  purpose of identifying electronically stored data particularly described in Attachment B.

18  ## III.    PROBABLE CAUSE

19  **A.  Background**

20      14.    The DEA Sacramento District Office ("SDO") and the Placer County SIU (the
21  Investigating Agencies) have been investigating the drug trafficking activities of Saybyn BORGES in
22  Placer, Sacramento, and San Joaquin Counties, California. During this investigation, through the use of
23  a Confidential Source (CS), the Investigating Agencies were able to identify that BORGES distributed
24  controlled substances in the form of counterfeit pharmaceutical tablets which contained fentanyl.

25  **B.  Information Related to Devices #1 and #2**

26      15.    Between April 24, 2018, and May 21, 2018, the CS was in contact with BORGES by
27  cellphone. The calls between the CS and BORGES were used to negotiate and organize the purchase of
28  Oxycodone tablets from BORGES. The calls between the CS and BORGES were recorded. The CS

AFFIDAVIT                4

1  purchased approximately 500 tablets from BORGES. The suspected tablets were sent to the DEA
2  Western Regional Laboratory (WRL) for further analysis. The results from the WRL indicated the
3  tablets had a net weight of 52.628 grams. The WRL confirmed the tablets contained Fentanyl.

4      16.    Between May 22, 2018, and June 7, 2018, at the direction of law enforcement, the CS
5  exchanged recorded telephone calls and text messages with BORGES, during which the CS negotiated
6  the purchase of approximately 7,000 Oxycodone tablets from BORGES for $126,000. BORGES met
7  with the CS at a location in Stockton, California. The CS met with BORGES at BORGES' vehicle in a
8  parking lot. BORGES was the sole occupant of the vehicle. Once undercover officers and the CS saw
9  BORGES in possession of the tablets, officers attempted an arrest of BORGES. BORGES used his
10  vehicle to ram the officer's vehicle and flee the scene. As BORGES fled the scene he threw items out of
11  the window of his vehicle. After a short pursuit BORGES was taken into custody. Officers searched
12  BORGES' vehicle and located approximately 100 tablets stamped "M 30." The stamp "M 30"
13  corresponds to OxyContin 30 mg tablets. Officers also located two cellular telephones, Device #1 and
14  Device #2. Officers seized the phones. Officers searched the road where the pursuit took place and
15  located a large number of tablets. The tablets were sent to the Western Regional Lab and found
16  toccontain fentanyl.

17      17.    On May 25, 2019, the Honorable Magistrate Judge Carolyn K. Delancy signed a search
18  warrant (2:18-SW-00456 CKD) authorizing agents to obtain precise location information for phone
19  assigned to 775-221-2856 for a period of 30 days from Sprint, the cellular provider. Location
20  information from Sprint assisted agents in conducting physical surveillance of BORGES leading up to
21  his arrest on June 7, 2018, in Stockton CA. On the day of BORGES's arrest, the CS had communicated
22  with BORGES on 775-221-2856. In addition, the location information provided from Sprint placed
23  BORGES in the area where DEA agents observed BORGES at the time of his arrest. Based on this, I
24  believe that the phone assigned the number 775-221-2856, for which DEA obtained a prior location
25  information warrant, was located in the car with BORGES at the time he was arrested. I also believe
26  that BORGES used cellphones to conduct his drug-trafficking business.

27      18.    On June 7, 2018, the day of BORGES's arrest, Device # 1 was located on the front
28  passenger seat of the gold Nissan driven by BORGES. Device #2 was located in the cup holder between

AFFIDAVIT                                                                    5

1  the front seats of the gold Nissan driven by BORGES. BORGES was the sole occupant of the vehicle
2  and was in sole possession of both devices at the time of his arrest.

3      19.     Based on my training and experience, I know that drug dealers often possess and use
4  more than one telephone for the purpose of conducting their illicit drug business and often use different
5  phones for the purpose of contacting sources, distributors, and sources and to avoid detection by law
6  enforcement.

7      20.     The Devices are currently in the lawful possession of the Drug Enforcement
8  Administration. The Devices came into the DEA's possession through seizure incident to BORGES's
9  arrest. Therefore, while the DEA might already have all necessary authority to examine the Devices, I
10  seek this additional warrant out of an abundance of caution to be certain that an examination of the
11  Devices will comply with the Fourth Amendment and other applicable laws.

12                          **IV.     TECHNICAL TERMS**

13      21.     Based on my training and experience, I use the following technical terms to convey the
14  following meanings:

15      a)      Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is
16  a handheld wireless device used for voice and data communication through radio signals. These
17  telephones send signals through networks of transmitter/receivers, enabling communication with
18  other wireless telephones or traditional "land line" telephones. A wireless telephone usually
19  contains a "call log," which records the telephone number, date, and time of calls made to and
20  from the phone. In addition to enabling voice communications, wireless telephones offer a broad
21  range of capabilities. These capabilities include: storing names and phone numbers in electronic
22  "address books;" sending, receiving, and storing text messages and e-mail; taking, sending,
23  receiving, and storing still photographs and moving video; storing and playing back audio files;
24  storing dates, appointments, and other information on personal calendars; and accessing and
25  downloading information from the Internet. Wireless telephones may also include global
26  positioning system ("GPS") technology for determining the location of the device.

27      b)      Digital camera: A digital camera is a camera that records pictures as digital picture files,
28  rather than by using photographic film. Digital cameras use a variety of fixed and removable

AFFIDAVIT                                          6

storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c) Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d) GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e) PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage

media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

f)      IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static-that is, long-term-IP addresses, while other computers have dynamic-that is, frequently changed-IP addresses.

g)      Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

22.      Based on my training, experience, and research, I know that the Devices have capabilities that allow them to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, PDA, and may be used to access the internet. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## V.      ELECTRONIC STORAGE AND FORENSIC ANALYSIS

23.      Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the devices. This information can sometimes be recovered with forensics tools.

///

1    24.    Forensic evidence. As further described in Attachment B, this application seeks

2    permission to locate not only electronically stored information that might serve as direct evidence of the

3    crimes described on the warrant, but also forensic evidence that establishes how the Devices were used,

4    the purpose of their use, who used them, and when. There is probable cause to believe that this forensic

5    electronic evidence might be on the Devices because:

6        a)    Data on the storage medium can provide evidence of a file that was once on the storage

7            medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph

8            that has been deleted from a word processing file).

9        b)    Forensic evidence on a device can also indicate who has used or controlled the device.

10           This "user attribution" evidence is analogous to the search for "indicia of occupancy" while

11           executing a search warrant at a residence.

12       c)    A person with appropriate familiarity with how an electronic device works may, after

13           examining this forensic evidence in its proper context, be able to draw conclusions about how

14           electronic devices were used, the purpose of their use, who used them, and when.

15       d)    The process of identifying the exact electronically stored information on a storage

16           medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic

17           evidence is not always data that can be merely reviewed by a review team and passed along to

18           investigators. Whether data stored on a computer is evidence may depend on other information

19           stored on the computer and the application of knowledge about how a computer behaves.

20           Therefore, contextual information necessary to understand other evidence also falls within the

21           scope of the warrant.

22       e)    Further, in finding evidence of how a device was used, the purpose of its use, who used

23           it, and when, sometimes it is necessary to establish that a particular thing is not present on a

24           storage medium.

25       f)    I know that when an individual uses an electronic device, the individual's electronic

26           device will generally serve both as an instrumentality for committing the crime, and also as a

27           storage medium for evidence of the crime. The electronic device is an instrumentality of the

28           crime because it is used as a means of committing the criminal offense. The electronic device is

AFFIDAVIT                                    9

1    also likely to be a storage medium for evidence of crime. From my training and experience, I

2    believe that an electronic device used to commit a crime of this type may contain: data that is

3    evidence of how the electronic device was used; data that was sent or received; and other records

4    that indicate the nature of the offense.

5    25.    Nature of examination. Based on the foregoing, and consistent with Rule 41(e)(2)(B), the

6    warrant I am applying for would permit the examination of the Devices consistent with the warrants.

7    The examination may require authorities to employ techniques, including but not limited to computer-

8    assisted scans of the entire medium, that might expose many parts of the device to human inspection in

9    order to determine whether it is evidence described by the warrant.

10   26.    Manner of execution. Because this warrant seeks only permission to examine the

11   Devices, which are already in law enforcement's possession, the execution of these warrants does not

12   involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the

13   Court to authorize execution of the warrants at any time in the day or night.

## VI.    CONCLUSION

15   27.    I submit that this affidavit supports probable cause for a search warrant authorizing the

16   examination of Device#1 described in Attachment A-1 and Device#2 described in Attachment A-2 to

17   seek the items described in Attachment B.

Respectfully submitted,

Aaron Kacalek
Task Force Officer
Drug Enforcement Administration

Subscribed and sworn to before me on:  _12/31/19_

The Honorable Allison Claire
UNITED STATES MAGISTRATE JUDGE

Approved as to form by AUSA CAMERON L. DESMOND

AFFIDAVIT                                                      10

## ATTACHMENT A-1

The property to be searched is an Apple iPhone. This phone has IMEI: 356709088331984 identified as exhibit N-9 under DEA case number R7-18-0020, referred to as "Device#1." Device#1 is currently located at the DEA Office, 4328 Watt Avenue, Sacramento, California.

This warrant authorizes the forensic examination of the Device for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT A-2

The property to be searched is a ZTE cellular telephone, Model: N9137, MEID DEC: 256691624000202338, and S/N: 320276384166 identified as Exhibit N-10 under DEA case R7-18-0020, referred to as "Device#2." Device#2 is currently located at the DEA Office, 4328 Watt Avenue, Sacramento, California.

This warrant authorizes the forensic examination of the Device for the purpose of identifying the electronically stored information described in Attachment B.

## **ATTACHMENT B**

1.      All records on the Device described in Attachment A that relate to violations of
Title 21, United States Code, Sections 841, 843, 846, and involve Saybyn BORGES and others
involved in the foregoing violations, including:

> a. Communications evidencing any of the foregoing violations, whether in draft or
> complete form, drafted or sent in any communications medium such as a
> communications application (e.g., WhatsApp, SnapChat), text message, e-mail,
> and in any form (e.g., text message, picture, emoji, video or audio file) and
> whether with a supplier, customer, or other participant in the conduct underlying
> the foregoing violations.
>
> b. Documents evidencing acquisition, use, sale, maintenance or refurbishment, or
> storage of any items used in the process of cultivating marijuana or of mixing
> substances for pressing into tablet form and any items used to cultivate marijuana
> or press substances into tablet form, including but not limited to pill presses, parts
> for pill presses, and dyes.
>
> c. Documents evidencing any efforts to study authentic drugs and controlled
> substances manufactured by pharmaceutical companies, including efforts to
> understand the physical or chemical properties of such drugs and controlled
> substances and how to mimic or copy them.
>
> d. Documents evidencing acquisition, distribution, sale, storage, of disposal of any
> drug or controlled substance and any material to be mixed with a controlled
> substance.
>
> e. Documents evidencing any use or movement of proceeds from the manufacturing,
> creating, and distributing of counterfeit drugs or controlled substances.
>
> f. Documents evidencing customers, potential customers, former customers, all for
> counterfeit drugs and controlled substances, and related identifying information.
>
> g. Documents evidencing types, amounts, and prices of counterfeit drugs and
> controlled substances trafficked as well as dates, places, and amounts of specific
> transactions, and as well as the ingredients in each of the drugs or controlled
> substances.
>
> h. All bank records, checks, credit card bills, account information, and other
> financial records.
>
> i. Account usernames or identifiers related to e-mail services, communications
> applications services, or cloud-based storage services.

j.  Any documents recording computer, tablet, or wireless phone use Metadata concerning any of the foregoing

k.  lists of customers and related identifying information;

l.  types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

m. any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information);

n.  any information recording Saybyn BORGES's schedule or travel;

2.      All names, words, telephone numbers, e-mail addresses, communications applications registered usernames, passwords, time/date information, messages or other electronic data in the memory of the Devices or on any server associated with the Devices.

3.      Evidence of user attribution showing who used or owned the Device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

As used above, the terms "Documents" and "Information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created, used, or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data), any photographic or text-based form, and in whatever folder, file, application (including wireless telephone "apps"), program, or other structure they are located in.

AO 93 (Rev. 11/13) Search and Seizure Warrant

# UNITED STATES DISTRICT COURT

for the

Eastern District of California

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| AN APPLE IPHONE CELLULAR TELEPHONE WITH IMEI: 356709088331984 AND A ZTE CELLULAR TELEPHONE MODEL #N9137 WITH S/N 320276384166 | ) ) ) ) ) | Case No.    2:19 SW 1181 ... _ AC . |

## SEARCH AND SEIZURE WARRANT

To:    Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____ Eastern _____ District of _____ California _____
*(identify the person or describe the property to be searched and give its location)*:

## SEE ATTACHMENTS A-1 and A-2, attached hereto and incorporated by reference.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

## SEE ATTACHMENT B, attached hereto and incorporated by reference.

**YOU ARE COMMANDED** to execute this warrant on or before _____ January 13, 2020 _____ *(not to exceed 14 days)*
☑ in the daytime 6:00 a.m. to 10:00 p.m.    ☐ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to: any authorized U.S. Magistrate Judge in the Eastern District of California.

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for _____ days *(not to exceed 30)*    ☐ until, the facts justifying, the later specific date of _____ .

Date and time issued:    12/31/19  11:02 am

_____
*Judge's signature*

City and state:    Sacramento, California

Allison Claire, U.S. Magistrate Judge
*Printed name and title*

AO 93 (Rev. 11/13) Search and Seizure Warrant (Page 2) (modified)

| Return |
|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name of any person(s) seized:

**Certification**

I swear that this inventory is a true and detailed account of the person or property taken by me on the warrant.

_____

Subscribed, sworn to, and returned before me this date.

_____
Signature of Judge                                                    Date